UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

FREDERICK GREER

VERSUS

WARDEN, LOUISIANA STATE
PENITENTIARY

CIVIL ACTION NO. 11-cv-1727

JUDGE HICKS

MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

### Introduction

A Caddo Parish jury convicted Frederick Greer ("Petitioner") of two counts of aggravated robbery. He was adjudicated a third-felony offender and received two concurrent life sentences. He pursued a direct appeal. State v. Greer, 981 So.2d 133 (La. App. 2d Cir. 2008), writ denied, 996 So.2d 1132 (La.). He next filed a post-conviction application in state court. Petitioner now seeks federal habeas corpus relief on the same grounds raised on appeal and post-conviction. For the reasons that follow, it is recommended the petition be denied.

### Relevant Facts

Billy and Shirley Giles, a retired oilfield worker and school teacher, ate at a Shreveport restaurant and returned to their home in Keithville. Mr. Giles was legally blind due to macular degeneration. Mrs. Giles was driving, and she pulled under the carport. A car pulled into the driveway behind them and gave a friendly honk. Mrs. Giles saw two

black males, one bigger than the other, get out of the car and approach.  She also saw a white female in the car.[1]

The men attacked the couple, knocked them down, and took credit cards, cash, wedding rings, and other jewelry from them.  The man who tried to remove Mrs. Giles' rings had difficulty and threatened to cut off her finger.  He eventually forcibly removed the ring, which crushed bones in Mrs. Giles' finger.  The larger man, who was noted to use the word bitch during the robbery, used Mrs. Giles keys to enter the house. That triggered an alarm system, and the robbers fled.

Darrius Shivers entered into a plea bargain agreement and testified at trial that he was the robber who emerged from the passenger side of the car.  He said that his cohort was Petitioner, who was the ringleader.  Shivers said that Petitioner was armed with a revolver and pressured him to participate in the robbery.  Amanda Canter turned herself in to police and admitted that she was the woman in the backseat of the car, a Honda Accord, which she owned.  Canter testified at trial that she allowed Petitioner to use the car in exchange for crack cocaine.  She said the group cruised around Mall St. Vincent trying to spot potential victims, but there were too many people present.  They drove to nearby I-49, where

---

[1]A page of Mrs. Giles' testimony, preceding Tr. 473, is missing from the record filed by the State.  Unfortunately, that appears to be the page where she offered much of her description of the assailants and the beginning of the crime.  Fortunately, the facts are set forth in the state appellate court opinion and not seriously challenged in this respect. It would nonetheless resolve any doubts if the State were to supplement the record with the missing page of testimony during the objections period that follows this Report and Recommendation.

Petitioner selected the Giles couple as their targets.  Canter testified that she watched from the backseat as Petitioner and Shivers carried out the robberies.

Hours after the robbery, Shivers, Petitioner, and others (but not Ms. Canter) went to a Bossier City Wal-Mart store and used Mrs. Giles' stolen gift cards to purchase several items.  Shivers identified the participants on a photo taken from a Wal-Mart security recording.

Two elderly females, Betty DeFatta and Tona Levy, were robbed in a similar fashion. After playing bridge, Ms. Levy was driving and about to drop off Ms. DeFatta at her home when a tall black male approached the passenger side of the car and put a knife against Ms. DeFatta's right arm.  He told the women to hand over their rings, purses, keys, and other jewelry.  He frequently referred to them as bitches and encouraged them to hurry.  After getting Ms. DeFatta's items, the robber leaned across the front seat of the Cadillac and took items from Ms. Levy.  The women said the man left in a light colored Honda or Toyota car, and a young female was in the car with him.  Ms. DeFatta said that the young woman was black.  Ms. Levy said that she did not have a good description of her because she just saw her as the car drove away.

A Shreveport police officer who was investigating the DeFatta/Levy robbery got information that Petitioner had been identified as a suspect in this case.  Noting the similar nature of the crimes, he assembled a six-man photo lineup that included a picture of Petitioner.  A computer placed the photos in random order, and the officer told the victims that a suspect may or may not be in the lineup.  Ms. DeFatta was not able to make an

Page 3 of  20

identification, but Ms. Levy immediately identified number two, the photo of Petitioner. The officer asked her three times if she was sure, and she said that she was. She also made a positive identification of Petitioner in court as the robber.

Petitioner testified and denied that he participated in either crime. He admitted knowing Shivers and Canter. He said Shivers was an acquaintance who dated a former girlfriend, which might explain why he would blame Petitioner for a crime. He admitted that Canter was one of his drug customers and suggested perhaps she blamed him because he refused to introduce her to another drug dealer in the Highland area. Petitioner admitted that it was him on the security video at Wal-Mart the night of the robbery, in the company of Shivers and others, but he said that he had been sitting around an apartment smoking marijuana, and waiting on Shivers to return (as opposed to being out participating in the robbery), and they later went to Wal-Mart.

Petitioner admitted to more than five felony convictions, but he stated that they all pertained to his drug trade rather than robbery. He did admit, however, a misdemeanor guilty plea to illegal possession of stolen things. Petitioner demonstrated that he had gold teeth and a tattoo on his neck that were not described by any of the victims. The tattoo is of a cobra and includes the inscription, "fuck all snake bitches."

**Ineffective Assistance of Counsel**

### A.  Introduction; Section 2254 Burden

Petitioner argued in his post-conviction application that his counsel was ineffective for several reasons. The trial court set forth the applicable <u>Strickland</u> standard and

concluded, without discussing any of the particular claims, that none of Petitioner's allegations were adequate to show that counsel did not exercise reasonable professional judgment or that, if different steps had been taken, the outcome of the trial would have been different.  Tr. 1082C-E.  The state appellate court noted that Petitioner had raised seven claims that counsel was ineffective, but it did not specifically address any of them.  The claims were rejected with the observation that Petitioner "failed to show either that his counsel provided deficient performance or that his trial was affected by the complained of actions."  Tr. 1186.  The Supreme Court of Louisiana denied writs without comment.  Tr. 1339.

To prevail on a claim of ineffective assistance of counsel, a petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different.  Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984). Petitioner's claim was adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold.  Schriro v. Landrigan, 127 S.Ct. 1933, 1939 ( 2007).

The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it.  The federal court's review is thus "doubly deferential."  Knowles v. Mirzayance,129 S.Ct. 1411, 1420 (2009).  "If this

standard is difficult to meet, that is because it was meant to be." Harrington v. Richter, 131

S.Ct. 770, 786 (2011).  Section 2254(d) "stops short of imposing a complete bar on federal

court relitigation of claims already rejected in state proceedings" and reaches only "extreme

malfunctions" in the state criminal justice system. Id.  Thus, "even a strong case for relief

does not mean the state court's contrary conclusion was unreasonable." Id.

The state courts did not provide much of an explanation for why they deemed these

claims meritless, but determining whether a state court's decision withstands review under

Section 2254(d) does not require that there be an opinion from the state court explaining its

reasoning. Harrington, 131 S.Ct. at 784.  The petitioner still has the burden to show that

there was no reasonable basis for the state court to deny relief. Id.  The federal habeas court

is authorized to review only a state court's decision, not the written opinion explaining that

decision.  It must review what arguments or theories could have supported the state court's

decision and ask whether it is possible fair-minded jurists could disagree that those

arguments or theories are inconsistent with a prior Supreme Court decision. Harrington, 131

S.Ct. at 786; Tarver v. Banks, 541 Fed. Appx. 434, 438 (5th Cir. 2013).

**B.  No Motion to Quash as Untimely**

Louisiana law provided that no trial should be commenced in a non-capital felony case

after two years from the date of institution of the prosecution.  La. C.Cr.P. art. 578.

Petitioner first appeared in court in February 2004 for appointment of counsel, and a bill of

information filed on April 19, 2004 formally instituted the prosecution.  Tr. 1.  Trial did not

begin until April 23, 2007, more than three years later.  Petitioner argues that his attorney was ineffective for failing to file a motion to quash on grounds of untimeliness.

The two-year period is suspended when a defendant files a motion to quash or other preliminary plea.  La. C.Cr.P. art. 580.  A preliminary plea is any pleading or motion filed by the defense that delays trial, which includes motions to quash, motions to suppress, applications for discovery, bills of particulars, and motions for continuances.  State v. Lathan, 953 So.2d 890, 894 (La. App. 2d Cir. 2007).  The suspension lasts from the date the motion is filed until the date the court rules on the motion.  The time that was suspended is not counted toward the two-year limitation.  After the court rules on the motion, the State has either (1) the remainder of the two-year time period or (2) a minimum of one year from the date of the ruling to commence trial, whichever is longer.  Id.

Defense counsel filed a motion for discovery and production of documents even before the bill of information was filed.  It was not until February 2006 that counsel reported the motion was deemed satisfied.  After a change of counsel, the defense filed a motion for continuance on April 28, 2006, which was granted.  Tr. 4.  Counsel made an oral motion for continuance on September 8, 2006, and it was granted.  Tr. 5.  The trial commenced on April 23, 2007, which was less than one year from both of the final continuances, so within the time allowed by law.  Any motion to quash on the grounds of untimeliness would have been denied.  Failure to file futile motions is not ineffective assistance.  Johnson v. Cockrell, 306 F.3d 249, 255 (5th Cir. 2002); Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994).

### C.  Plea Advice

Petitioner asserts that the prosecution offered a 20-year plea offer, but he did not accept it because he labored under the misunderstanding that there was no evidence to identify him as the perpetrator of the robbery.  He contends that counsel never told him that co-defendant Shivers had struck a deal to testify against Petitioner, that Amanda Canter had identified him to police, and that the DeFatta/Levy evidence could be used against him.

Petitioner did not submit any evidence to the state court (or this court) to support his bold and conclusory contention that he was totally in the dark about any evidence against him.  His claim that he was unaware that the other crimes evidence could be used against him is rebutted by the record that shows he was present with counsel at the Rule 404(b) hearing at which the court ruled the testimony of the DeFatta/Levy victims was admissible.  Tr. 927, 954.  The minutes show that Petitioner was also present at his preliminary hearing, at which the prosecution would have been required to outline its case and establish probable cause to hold him for trial.  It appears that the preliminary hearing was not transcribed.

A Strickland petitioner must overcome the limitations of Section 2254(d) "on the record that was before the state court."  Cullen v. Pinholster, 131 S.Ct. 1388 (2011).  It is reversible error for a federal district court to hold a federal hearing to flesh out such a claim. Pape v. Thaler, 645 F.3d 281, 288 (5th Cir. 2011).  Petitioner provided the state court with no evidence to support his unlikely claim that counsel kept him completely in the dark about the State's case against him.  The state court's rejection of the claim was, therefore, a reasonable application of Strickland.  Relief is not permitted on this claim.

### D.  No Motion to Suppress Identification

Petitioner argues that counsel was ineffective because he did not file a motion to

suppress Ms. Levy's identification of him from the photo lineup.  Had a motion been filed,

the state court would have looked to several factors to help determine the likelihood of

misidentification: (1) the opportunity of the witness to view the criminal at the crime scene;

(2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the

criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5)

the length of time between the crime and the confrontation.  Neil v. Biggers, 93 S.Ct. 375

(1972).   Unless the circumstances show "a very substantial likelihood of irreparable

misidentification" then the identification is admissible, and its weight is for the jury to

decide.  Manson v. Brathwaite, 97 S.Ct. 2243, 2254 (1977).

Ms. Levy, who was 83 at the time of trial, told police on the night of the crime that

she did not think she could identify the robber because she was stressed out at the time of the

incident. Tr. 798.  Later, she was talking to her daughter while eating in a restaurant, and her

daughter asked if a man in the restaurant looked like the robber.  Ms. Levy replied no, and

she began to describe the robber.  Her daughter called Detective Jones and suggested that

Ms. Levy might be able to identify the man despite her stated uncertainty right after the

crime. Tr. 799.

Sgt. Jones testified that he made the lineup with photos of Petitioner and five other

subjects with similar facial features.  He told Ms. Levy she was not under any obligation to

pick anyone, and a suspect may or may not be in the lineup.  Tr. 773, 777-78.  Ms. Levy

testified that she was asked three times about her selection, and she was positive she had identified the robber. Tr. 800.

The lineup consisted of six photos, with two lines of three photos on a page. Petitioner's photo was in the center position of the top line. Tr. 242. He argues that counsel could have shown that this was an inherent bias in the lineup. Counsel did ask about this at trial, but the officer explained that the photos were selected on a computer and put in order by a "randomize feature" over which he had no control. It was pure chance that Petitioner's photo was in the center of the top row. Tr. 781.

Ms. Levy would have had a reasonable opportunity to view the robber at the scene, as she sat in the driver's side of the car and he robbed her passenger. The light on the car would likely have been on with the door open, and the robber leaned across near Levy to take her property. Several weeks passed between the crime and the lineup, and the witness did not give a prior detailed description of the criminal, but she demonstrated a great deal of certainty once she was shown the lineup.

Counsel chose not to file a motion to suppress the identification. Some reasonable attorneys facing a similar situation may have elected to do so, but it is unlikely the motion would have succeeded. A couple of the factors undermined the reliability of the identification but others supported it. There was not "a very substantial likelihood" of misidentification, so the state court almost certainly would have denied any such motion and allowed the jury to assess the weight of the identification testimony. More important, there is no basis to find that the state court was objectively unreasonable in its application of

<u>Strickland</u> when it decided that there was not a reasonable likelihood of a different outcome at trial had counsel filed a motion.  Habeas relief is not available on this claim.

### E.  No Request for Limiting Instruction

Under the Louisiana <u>Prieur</u> decision, the court, at the request of the defendant, must offer a limiting instruction to the jury at the time other crimes evidence is introduced and must charge the jury at the close of the trial of the limited purpose the other crimes evidence serves and that they cannot convict the defendant for a crime other than the one charged.  <u>See</u> <u>State v. Dauzart</u>, 844 So.2d 159, 167 (La. App. 5th Cir. 2003).  Petitioner complains that his counsel did not request a limiting instruction when the court allowed the introduction of other crimes evidence in the form of the Levy/DeFatta evidence and testimony that Petitioner distributed crack cocaine.  A review of the record does not indicate that any such limiting instruction was requested or given either at the time the evidence was introduced or during the final jury instructions.

This is another situation where many zealous defense attorneys would have requested limiting instructions.  On the other hand, some attorneys might be of the reasonable view that it is best not to have any more than minimum attention paid to other crimes evidence, and having the judge stop and give special instructions to the jury about how to assess that evidence has the potential to actually emphasize the evidence to a greater degree.  There are grounds for reasonable debate on the wisdom of such a request, which means the state court's decision was not an objectively unreasonable application of the performance prong of <u>Strickland</u>.  The same is true with respect to the prejudice prong.  There is little reason to

believe the outcome of the trial would have been different had counsel requested such limiting instructions. Even Petitioner states in his brief that such instructions often fly over the head of the average lay juror and do little to cure the effect of the evidence. Accordingly, relief is not available on this claim.

### F. No Objection to Shivers' Testimony of Guilty Plea

The State called co-defendant Shivers as a witness. The prosecutor began by going over Shivers' admitted criminal history, followed by an admission that Shivers, in connection with this case, entered a plea of guilty to second-degree robbery and received a seven-year sentence. The prosecutor and Shivers also discussed the sentencing exposure that he faced before the plea agreement, as well as other facts about how the agreement came together.

It is generally true that a co-defendant's guilty plea may not be used as substantive evidence of a defendant's guilt. But if a co-defendant testifies, evidence of the guilty plea may be elicited for the jury to consider in assessing his credibility as a witness. Petitioner complains that his attorney should have objected to Shivers' testimony regarding the guilty plea and requested a limiting instruction.

This is not a case where the mere fact of a co-defendant's conviction was used to suggest that the defendant on trial was also guilty. Had Shivers testified with no mention of his plea arrangement, defense counsel would have himself vigorously cross-examined him about the plea in an attempt to show motivation for his testimony. Petitioner's main complaint seems to be that the defense was denied the ability to pursue such impeachment because the prosecution stole its thunder by admitting the facts during direct examination.

There was simply no basis for defense counsel to object that he should be allowed to be the first to elicit evidence of the plea agreement. Attorneys on both sides of a case often reveal weaknesses in a witness's background during direct examination, and the other side is not entitled to object that it was denied the ability to conduct a "gotcha" cross-examination on the topic. Any objection by counsel along those lines would have been overruled. A request for a limiting instruction regarding the use of the co-defendant's guilty plea might have been granted, but there is no reason to believe that it would have had any significant effect on the outcome of the case. The state courts resolution of this claim was not an objectively unreasonable application of Strickland.

### G. Absence of Petitioner or Counsel at Some Appearances

Petitioner asserts, and the minutes reflect, that he appeared in court on some occasions without counsel. Once the right to counsel attaches, it continues to apply at every critical stage of the proceedings. A critical stage is one where the accused required aid in coping with legal problems or assistance in meeting his adversary, and the substantial rights of the accused may be affected. McAfee v. Thaler, 630 F.3rd 383, 391, (5th Cir. 2011), citing US v. Ash, 93 S.Ct. 2568 (1973). The minutes indicate that the appearances where Petitioner was without counsel were preliminary appearances where nothing happened except the appointment of counsel or setting a date for the preliminary hearing. Petitioner was never required to face an adversarial situation or have substantial rights at issue without counsel by his side. The state court was not unreasonable in rejecting Petitioner's claim that these appearances denied him his right to counsel.

Petitioner complains that, at other times, counsel was present but Petitioner was not. Petitioner complains that this denied him his right to be present.  The Due Process Clause guarantees a defendant "the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." Kentucky v. Stincer, 107 S.Ct. 2658 (1987).  Thus, the right to be present at trial extends to certain pretrial proceedings, particularly where testimony would be taken at the proceedings, and the defendant's right to confront witnesses is involved. Id.

There are often court appearances in the state court that are little more than a status conference, with nothing of significance done except to discuss the progress of the case and set another date for appearance.  The minutes indicate that, on some such occasions, Petitioner was not delivered from jail to court, but there were no significant proceedings taken at those times.  Petitioner points to an indication that counsel agreed at one such appearance that a discovery request had been satisfied, but that is the kind of administrative task that attorneys routinely tend to without the presence of their client.  Petitioner's presence would not have contributed to the fairness of the procedure.

Petitioner also complains that the victims were in the courtroom at some of his appearances, saw him wearing his prison uniform, and tainted identification testimony by seeing him.  Victims and other members of the public have a right to be present in court. Moreover, neither Mr. nor Mrs. Giles offered identification testimony at trial beyond Mrs. Giles' general description of a large, black man.  Petitioner has not demonstrated any

articulable prejudice with regard to this claim, and the state court was not unreasonable in denying it.

### H. Failure to Win

Petitioner's final attack on the effectiveness of counsel contends that he did not conduct a reasonable investigation, did not procure impeachment evidence, did not call witnesses to support the defense, and failed to present an available defense. This catch-all attack on counsel's performance faults him for not interviewing every possible potential witness, discovering who made a 911 call and gave a tip on the crime, learning the identity of all persons who used the stolen credit cards, and the like.

There is always another person an attorney could have talked to or fact he might have discovered. But there is nothing about the people or matters suggested by Petitioner that gives rise to any plausible belief that, if counsel had looked into them, it would have avoided a conviction or helped the defense in any significant way. The state court's rejection of this rather conclusory final claim was not an objectively unreasonable application of Strickland.

### Presence at Pretrial Hearings

Petitioner argued in his post-conviction application that he was prejudiced when the trial court held "numerous hearings" in his absence. (This claim is somewhat repetitive of one discussed above that Petitioner listed under his ineffective assistance theories.) The only particular hearing he identified, however, was the preliminary hearing. He alleged that he was removed from the court and returned to jail, after which his co-defendants took the stand and offered testimony that he committed the crimes. Tr. 1059-61.

No party has pointed to a transcript of the preliminary hearing in the record.  The minutes state that Petitioner was "present with counsel" when the "case was taken up for preliminary examination."  The entry continued:

> Evidence was adduced, closed and the matter was submitted.  The court ruled probable cause shown.  The accused waived arraignment and pled not guilty.

Tr. 2.

There is nothing in that entry or elsewhere in the record to support Petitioner's claim that he was absent from any part of that proceeding.  The trial court denied the claim with reference to the minutes.  It also pointed to minutes showing that Petitioner was present with counsel at the pretrial hearing on admissibility of the other crimes evidence.  Tr. 1082-E.  The appellate court rejected the claim with the observation that court minutes reflect Petitioner's presence.  Tr. 1187.

Petitioner continues to press this claim, but there is no factual evidence to support his contentions.  He must make his case based on the record that was before the state court, and he has pointed to no evidence in it that he was absent from any part of his preliminary examination or other significant hearing.  All the evidence is to the contrary, so the state court was quite reasonable in rejecting this claim.

**Bench Conferences Not Transcribed**

Petitioner argues that there were a number of bench conferences held during voir dire, and the conferences were not recorded by the court reporter.  He argues that not enough of the jury selection process was recorded to determine with reasonable certainty whether there

were grounds to appeal any erroneous denials of a challenge for cause.  The Supreme Court of Louisiana held, a few years after this trial, that as a matter of state criminal procedural law, bench conferences are a material part of the proceedings.  If there are  potential grounds to appeal based on how challenges were ruled upon and used, the absence of a transcript or other contemporaneous records to account for the selection process requires reversal.  State v. Pinion, 968 So.2d 131 (La. 2007).

The trial court denied this claim because (1) court minutes showed how challenges were used and (2) Petitioner made no showing of prejudice because of something not recorded during a bench conference.  Tr. 1082 -E.  (The minutes merely show which party used how many challenges and how many jurors were excused for cause.  They do not identify the jurors challenged or note any challenges for cause that were denied.  Tr. 6.)  The appellate court denied relief, noting that under Louisiana law at the time there was no per se rule requiring the transcription of bench conferences.  Moreover, Petitioner had not shown prejudice.  Tr. 1187.

This court may not provide habeas relief based on the later holding in Pinion.  Federal habeas relief is available to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a).  The Supreme Court has "stated many times that federal habeas corpus relief does not lie for errors of state law."  Swarthout v. Cooke, 131 S.Ct. 859, 861 (2011).

Turning to federal law, the Supreme Court has not required the State to provide a full transcript based on mere request. Draper v. State of Washington, 83 S.Ct. 774 (1963).  Only

those parts that are germaine to consideration of an appeal must be provided.  This means a defendant must allege a specific error that can be uncovered through production of portions of the voir dire transcript not included in the record.  The State is not required to provide complete transcripts so that a defendant may conduct a fishing expedition to seek out possible errors for appeal.  Johnson v. Cooper, 2013 WL 4548526, *7 (E.D. La. 2013), citing Kunkle v. Dretke, 352 F.3d 980, 985-86 (5th Cir. 2003).  Petitioner has not articulated any particular appellate issue that could have been fleshed out by obtaining a transcript of a bench conference, so habeas relief is not available on this claim.

**Juvenile Records of Witnesses**

Petitioner argued in his post-conviction application that he was denied due process when the State did not disclose the full criminal history of Shivers and Canter, including their juvenile criminal records.  The only factual support was the bare assertion in his memorandum was that (1) the trial court denied a defense motion to obtain juvenile records of the state witnesses and (2) he could have discovered evidence that could be used to impeach Canter's credibility.  Tr. 1064-66.  (Neither Petitioner nor the State have cited to a copy of such a motion or ruling in the record.)  The trial court denied this claim on the grounds that Petitioner "failed to substantiate or provide a substantive basis for this claim."  Tr. 1169.  The appellate court summarized the claim and stated that Petitioner failed to prove the materiality of any juvenile records.  Tr. 1187.

The Brady requirement that the prosecution disclose evidence favorable to an accused where the evidence is material extends to impeachment evidence.  US v. Bagley, 105 S.Ct.

3375 (1985).  To establish a <u>Brady</u> claim a petitioner must establish that the evidence was

(1) suppressed, (2) favorable, and (3) material.  <u>Wright v. Quarterman</u>, 470 F.3d 581, 591

(5th Cir. 2006) .  Evidence is material if it "could reasonably be taken to put the whole case

in such a different light as to undermine confidence in the verdict." <u>Kyles v. Whitley</u>, 115

S.Ct. 1555, 1566 (1995). In short, a petitioner must show a "reasonable probability of a

different result." <u>Banks v. Dretke</u>, 124 S.Ct. 1256, 1276 (2004).

Both Shivers and Canter admitted that they were criminals with prior convictions and

who frequently used illegal drugs and engaged in other unsavory and illegal conduct.  There

is no factual basis in the state court record, or the record of this court, to suggest that there

might have been something in the juvenile criminal histories of the state witnesses that would

have been admissible.  And there is no hint that any such evidence would have impeached

Shivers and Canter any more than they had been and put the whole case in a different light

so that there was a reasonable probability Petitioner would not have been convicted.  That

is nothing more than rank speculation, and it does not permit habeas relief from the two

convictions.

Accordingly,

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be **denied**.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties

aggrieved by this recommendation have fourteen (14) days from service of this report and

recommendation to file specific, written objections with the Clerk of Court, unless an

extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within seven (7) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b).  Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 18th day of July, 2014.

Mark L. Hornsby
U.S. Magistrate Judge